RILEY PENNSYLVANIA OIL COMPANY, Appellant, v. THOMAS W. SYMMONDS, Defendant, MARVIN TRITCH, Garnishee, Respondent.

Kansas City Court of Appeals, December 18, 1916.

1. **BULK SALES STATUTE: Waiver: Estoppel: Notice of Sale.** The fact that a creditor, or his agent, knows, or is verbally notified, that a sale of stock of merchandise has been made contrary

to the provisions of the bulk sales law, is not a waiver of the illegality of the sale. Such creditor should be notified in writing as provided in the act.

2. ———: **Local Sales Agent: Authority: Waiver.** A local sales agent for a creditor has no authority to waive the provisions of the Bulk Sales Act.

3. ———: **Attachment: Garnishee.** The law known as the bulk sales act, makes sales in bulk without the vendor furnishing the vendee with a sworn list of creditors, and without the vendee notifying the creditors, a fraudulent conveyance for which an attachment may be had under the general attachment statute.

4. ———: **Vendee: Trustee: Equality: Limitation.** A vendee who buys a stock of merchandise without complying with the Sales in Bulk statute, becomes a trustee for the creditors and becomes liable to all such creditors who institute suit by attachment, or other proper proceeding, within the limited period of ninety days from the time he took possession. The intention of the statute is to preserve an equality among creditors mentioned in section 1, during the period of ninety days.

5. ———: ———: **Remedy: Receiver: Garnishee.** Section 2 of bulk sales act, providing that if a stock of merchandise is sold in bulk without compliance with the act, the vendee, upon application of a creditor, shall become a receiver and be held accountable to such creditors for all the merchandise, is not an exclusive remedy, and does not prevent an attachment or garnishment by the creditors as contemplated by section 1.

6. ———: **Remedy: Identity of Goods.** Section 2, of the act is confined to those creditors who may be able to identify the goods they sold to the vendor and who desire to pursue such goods in specie.

7. ———: **Constitutional Question: Exception.** Where a respondent raised a constitutional question in the trial court which was ruled against him and he abandoned the point by not preserving an exception and the case was then decided in his favor; it was *held* that he could not revive the constitutional question in the appellate court.

8. **ATTACHMENT: Order of Publication: Garnishee: Judgment: Practice.** In an attachment where no personal property is found which may be seized and the sheriff executes the writ by summoning a garnishee; if there is no appearance and the service is by order of publication, the proper practice is for the trial court to first try the issues between the plaintiff and the garnishee to ascertain if he has any of the defendant's property, forming the *res* to which the court's jurisdiction may attach. Then, if the finding is against the garnishee, judgment should be rendered against the defendant; and lastly, judgment should be rendered against the garnishee on the finding.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,* Judge.

REVERSED AND REMANDED (*with directions.*)

*Higbee & Mills* for appellant.

*Weatherby & Frank* for respondent.

ELLISON, P. J.—Defendant Symmonds, owned a stock of merchandise and was indebted to plaintiff. He sold the stock in bulk to Tritch. Neither of them complied with the Sales in Bulk statute in Laws 1913, page 163. Plaintiff brought an action by attachment and garnished Tritch. The trial court found for Tritch and plaintiff comes here for relief.

The case involves a construction of the statute just mentioned. It is provided in section 1, that any sale of the whole or greater part of a stock of merchandise, otherwise than in regular course of trade shall be fraudulent and void as against all creditors of the vendor, unless the vendee seven days before the sale obtains from the vendor a written statement, under oath, of all of his creditors with the amount due to each; and the vendee shall then, at least seven days before taking possession or paying therefor, notify each of these creditors of the proposed sale, by telegraph or registered letter. The section contains a proviso, that if the vendor delivers to the vendee a written waiver of these requirements by the creditors, contained in the verified statement, the statute will not apply.

Section 2 of the act provides that any vendee who shall conform to the provisions of this act shall not be held in any way accountable to any creditor of the vendor, for any of the merchandise that have come into the possession of the vendee by virtue of said sale, "but any vendee who shall fraudulently fail or refuse to comply with the provisions of the act, shall upon application of any of the creditors of the vendor become a receiver and be held accountable to such creditors for all the

merchandise that have come into his possession by virtue of said sale." Then, immediately following, is this proviso: "Provided however, that nothing in this act shall be so construed as to give any creditor any right to, or lien on any merchandise, except the goods sold by such creditor."

Section 4a provides that no proceeding at law, or in equity, shall be brought against any vendee to invalidate any sale after the expiration of ninety days from date of delivery to such vendee.

We gather from the record that the trial court was of the opinion that notwithstanding in making the sale, the provisions of this statute were ignored, yet under facts appearing in evidence there was a waiver by plaintiff, or stated in another way, there was an estoppel against plaintiff which deprived it of the right to invoke such statute. The facts bearing on such supposed waiver, or estoppel, are that one Few was plaintiff's local sales agent, who also collected for bills he sold, and that he knew of the sale "a week or ten days before it took place," and was told (verbally) by Tritch to "look after his account," when he replied that he had "a check for a part of it and there was only a small amount left." That thereupon Tritch paid Symmonds all but $500 of the purchase money, such sum being the unpaid bills to other creditors, not including any of plaintiff's bill. That afterwards it developed that the check given to Few was worthless.

The evidence in plaintiff's behalf tended to show that the verbal notice to Few was not until after the sale and delivery to Tritch. It is stated that both Symmonds and Tritch have absconded.

It is thus seen that the statute has not been complied with in any particular. The specific provisions of the law as to written lists of creditors verified by affidavit, and written notice to such creditors within certain times, were no doubt made to avoid such disputes and trouble, that this case has developed.

The statute (Sec. 1) makes but one provision for a waiver of its terms and that must be a written one from

the creditors; 1. It is, however, unnecessary to say whether any other kind of waiver could be made, or estoppel invoked, since, in this case, the acts of Few, claimed to constitute a verbal waiver, were the acts of an unauthorized person. A local sales agent has no authority, by virtue of that employment, to waive the provisions of the act. [Knight v. Stevens Shoe Co., 137 Ga. 493, 495.]

But it is insisted by counsel that the bulk sale act cannot be invoked or applied by an ordinary action of attachment provided for by the general statutes. We do not doubt that it can. Under the attachment statute (section 2294, Revised Statutes 1909) a fraudulent conveyance by the debtor as against creditors, is ground for attachment; and a conveyance in defiance of the bulk sale act is declared to be a fraudulent conveyance as against creditors, and thus, by its own terms, becomes a cause of attachment.

The act has been construed in this State as furnishing an additional character of fraudulent conveyance for which an attachment may be had under the general statute. [Supply Co. v. Smith, 182 Mo. App. 212.] In that case, in the opinion of Judge FARRINGTON, supplemented by the concurrence of Judge STURGIS, is to be found a most interesting discussion of the entire question. Their conclusion that an attachment may be had, is in keeping with the views expressed in States with similar statutes to section 1 of our act. [Musselman Grocer Co. v. Kidd, 115 Mich. 478; Kohn v. Fishbach, 36 Wash. 69; Carstarphen Warehouse Co. v. Fried, 124 Ga. 544; Interstate Rubber Co. v. Kaufman, 98 Neb. 562.]

It seems to us that the meaning of the statute is, that a vendee who buys and obtains possession of merchandise in bulk, without ascertaining the vendor's creditors and notifying them as required by the statute, becomes a trustee for such creditors, and liable to them in the proportion of their respective claims; that is, he is liable as such trustee to all who may in obedience to section 4a of the act, institute their proceeding, within the ninety days from the day he accepted delivery of the property.

After the expiration of that limited period he cannot be disturbed in his purchase so far as concerns any violation of that act is concerned.

The latter section is broad, applying against the creditor whether he has been notified or not. For if not notified, it is justly assumed that the limited period is sufficient time for all diligent creditors to have learned of what has taken place. The intention of the statute is to preserve an equality among the creditors under section 1, during the period limited for proceedings against the sale, and thereby prevent a race for preference which might otherwise result. .

We do not mean to be understood as saying that an attachment is the only remedy under section 1. For, it has been held that a proceeding on execution may be had. [Mutz v. Sanderson, 94 Neb. 293; Dickenson v. Harbison, 72 Atl. 941 (N. J.); and by a bill in equity; Sheve v. Vander Kolk, 97 Neb. 204.] Though in Georgia it was held that in cases where the legal remedy was complete without the aid of equity, the latter would be denied; and that would, perhaps, be the view of our courts.

One of the reasons urged why an attachment should not be had is, that section 2 of the act (which we have above set out) providing for a receiver controls the provisions of section 1, and is the only remedy which may be had. We think with the Springfield Court of Appeals in Supply Co. v. Smith, supra, that the section in no way affects the right to an attachment. The first clause of section 2, could as well have been left out; it only adds emphasis to what we would have known without it; that is, that the vendee who complied with the act should have his goods without being accountable to any creditor. But the second clause declaring that if he fraudulently failed or refused to comply with the act, he thereby, on the application of any creditor, became a receiver, does provide for a certain class of creditors another remedy than attachment. When read in connection with the proviso, as it must be, it provides for that class of creditors, who may apply for its benefits, if they are able to identify the articles they sold to the vendor. The section without the

proviso, is that the vendee who has failed to comply with the statute shall be held accountable to those creditors who may apply, "for *all* the merchandise," but the proviso qualifies that expression by saying, in effect, that the vendee shall be liable "for all the merchandise *sold and delivered by such creditor.*" "A proviso," says Judge GRAVES in Brown v. Patterson, 224 Mo. 639, 658, is "to restrict or restrain the preceding portion of the statute of which it forms a part." Continuing the Judge quotes: "'A proviso in a grant or enactment is something taken back from the power first declared. The grant or enactment is to read, not as if the larger power was ever given, but as if no more was ever given than is contained within the terms or bonds of the proviso.'" Applying this to the statute under review, we find that the remedy under section 2, is only open to that class of creditors who may be able to identify the goods sold by them and upon which their claim is founded. The vendee, under this section, is only accountable to "*such* creditors" as make application asking that he be held to be a receiver.

We think that sections 1 and 2 are not open to the criticism of being inharmonious. For, if some creditors attached under section 1, and others, who could identify their goods, applied for a receivership so as to segregate them, their vendor's lien (if it may be so called) could be enforced against such goods and the ordinary attaching creditors could proceed against those not identified and any excess of those segregated over the amount of the claim of the identifying creditor. Different interests ought easily to be adjusted by the court. Aside from this provision, we have no recognition in this State of a vendor's lien on personal property. The nearest preference we have given a vendor is found in section 2194, declaring that such property shall not be exempt from execution for the purchase price.

In several other States "the sales in bulk" statute contains a section like our section 2, *except* the proviso. [See Copy of Michigan statute set out in Musselman Co. v. Kidd, Dater Co., 151 Mich. 478.]

The garnishee claims that the act is unconstitutional. He made that point in the trial court. It was overruled and he acquiesced by failing to preserve an exception, and must therefore be held to have abandoned it. In State ex rel. v. Smith, 176 Mo. 44, the relator raised a constitutional point which the trial court overruled; but afterwards decided the case in the relator's favor. This judgment was reversed on appeal of the other party to this court. The relator then sought to have the case certified to the supreme court on account of the constitutional question. But that court held that he should have excepted to the trial court's ruling and saved the point for review in some appropriate manner.

Finally an important point of practice has been presented. It appears that an order of publication was taken against defendant and the attachment writ put in the hands of the sheriff, who served it by summoning the garnishee and making due return of the writ. Then plaintiff, relying upon the law as stated in Hauptman & Co. v. Whittle, 85 Mo. App. 188, took judgment by default against defendant which was made final after hearing the testimony in proof of his account, the amount to be levied and made out of defendant's goods "attached in the hands of the garnishee, Tritch." But at this time it had not been ascertained that Tritch had any of defendant's goods in his possession and afterwards, in answer to interrogatories, he denied that he had. It appears that on order of publication and attachment, with no appearance by the defendant, and no property which has been seized, the court has no jurisdiction except what it may get from the *res* in any garnishment that may have been served. [Mercantile Co. v. Bettles, 58 Mo. App. 384; Typewriter Co. v. Cash Register Co., 156 Mo. App. 98, 108.] It therefore seems to be irregular to enter a judgment against the defendant which is only to be made out of the property in the hands of the garnishee, before it is known that there is anything in his hands; and, unless it turns out that he has defendant's property there being no personal service or appearance, the court has no jurisdiction.

We will therefore reverse the judgment and remand the cause with directions to set aside the judgment rendered against defendant Symmonds on the 24th of May, 1915, and to enter of record a finding that the Garnishee, Tritch, has the property in controversy in his hands liable to garnishment, and that it has been garnished by the sheriff.    Then enter the judgment against defendant Symmonds; and then enter the appropriate judgment against Tritch the garnishee.   All concur.