AUGUST BALTER and OLIVER J. MILLER, Trustee in Bankruptcy of the Estate of CYRUS N. CRUM, Respondents, v. CYRUS N. CRUM, Defendant, DECKER, ECKHARDT, KRATZ and JOS. S. CALDWELL, Appellants.

St. Louis Court of Appeals.  Opinion Filed May 7, 1918.

1. **FRAUDULENT CONVEYANCES: Sales: Bulk Sales Law: Construction of Statute.** In construing the Bulk Sales Law, session acts of Missouri, 1913, p. 163, a statute penal in its nature, no sales are to be included as coming within its purview unless clearly within

its terms, as sales in bulk laws, being in derogation of the common law, and of a person's right to alienate his property without restrictions, are to be strictly construed.

2. ———: ———: ———: **Construction as a Whole.** The Bulk Sales Law should be read as a whole for the purposes of construction.

3. ———: ———: ———: **Livery Stable Business: Stock of Merchandise: Fixtures and Equipment: Construction.** The Bulk Sales Law, session acts of Missouri, 1913, p. 163, applying to the sale, trade, or other disposition of the major part in value or the whole of a stock of merchandise, or merchandise, fixtures, and equipment, or equipment pertaining to the vendor's business, has no application to the sale of the wagons, horses, harness, etc., of one whose business is that of owning and operating a livery and boarding stable; the words "stock of merchandise" as used, means goods or chattels which a merchant has for sale, and the words "fixtures and equipment" mean fixtures and equipment, or either one, pertaining to the vendor's business of merchandising.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. George H. Shields,* Judge.

REVERSED.

*Seebert G. Jones* for appellants Decker, Eckhardt and Kratz.

(1) The court erred in permitting the introduction of any evidence against defendants Decker, Eckhardt, Kratz, and Caldwell, over the objection of the defendants, on the ground that the petition did not state a cause of action against them. Peoples Savings Bank v. Van Allsburg, 165 Mich. 524; Bowen v. Quigley, 130 N. W. 690, 34 L. R. A. (N. S.) 218; Peoples Savings Bank v. Allsbuy, 131 N. W. 100; Spurr v. Travis, 145 Mich. 721; Aff v. Morehead, 235 Ill. 40; Gallus v. Elmer, 193 Mass. 106; Everett Produce Co. v. Smith, 82 Pac. 995; Lee v. Gillen, 99 Neb. 730; Young v. Lemieux, 79 Conn. 420; Walp v. Movar, 76 Conn. 521. (2) The court erred in holding that the Bulk Sales Law of Missouri applied to and covered transactions as involved in this case as shown by the evidence. (Same as under Point One.) State v. Mc-

Cance, 110 Mo. 398; State v. Schuchman, 133 Mo. 117; State v. Howard, 137 Mo. 288; State v. Geitner, 134 Mo. 527; State v. Reid, 125 Mo. 48; Bulk Sales Law, Session Acts Missouri 1913, p. 163. (3) The court erred in finding and holding that Decker, Eckhardt and Kratz paid Crum less than the reasonable market value for property purchased by them respectively. (The Evidence.) (4) The court erred in overruling defendants Decker, Eckhardt, Kratz, and Caldwell's motion for a new trial. (Same as under Point I.) (5) The court erred in overruling defendants Decker, Eckhardt, Kratz, and Caldwell's motion in arrest of judgment. (Same as under Point I.)

*Albert E. Hausman* for appellant Joseph S. Caldwell.

(1) As the sales made by Crum to Caldwell and the other appellants were each separate and distinct from the other, the Bulk Sales Law of 1913 does not apply. Carpenter v. Karner, 193 Federal Rep. 762; Cooney v. Sweat, 25 L. R. A. (N. S.) 758. (2) The mules sold by Crum to Caldwell were not merchandise, fixtures or equipment, as those words are used in the Bulk Sales Law. Bowen v. Quigley, 34 L. R. A. (N. S.) 218; Everett Produce Co. v. Walsh, 40 Washington 55, 2 L. R. A. (N. S.) 331; Rubey v. Mining Company, 21 Mo. App. 156; People v. Railroad Co., 176 Ill. Supr. 512. (3) As there was no evidence tending to show any fraud on the part of the appellants this suit was improperly brought under section 2 of the Bulk Sales Law. Joplin Supply Co. v. Smith, 182 Mo. App. 212; McGreenery v. Murphy, 39 L. R. A. (N. S.) 374; Worshaw v. Murchison, 66 Ga. 715; Torlina v. Traylicht, 21 Pac. 68, 5 N. M. 148; Finlay v. Byson, 84 Mo. 664.

*Henry H. Oberschelp* for respondents.

Point 1 and 2 are in reply to brief of appellants Decker, Eckhardt and Kratz, and points 3, 4 and 5 to

that of appellant Caldwell. (1) The property and business in question, livery and boarding stable, came within the Missouri Bulk Sales Law. Laws of Mo., 1913, p. 163; Off v. Morehead, 235 Ill. 40. (2) (a) There was evidence that the judgment rendered against Decker and the judgment rendered against Eckhardt and Kratz were for the respective values of all they got, and they were not excessive. (b) Besides, this point appellants Decker, Eckhardt and Kratz are now attempting to raise in their point 3, was never brought to the attention of the trial court and was not preserved or contained in either their motion for new trial or in arrest. Canady v. Melette, 170 Mo. App. 451. (3) The sales to all of the appellants were so related as to bring each and all within the Bulk Sales Law. Moreover, Caldwell, who alone raises this contention, bought all that was left on the premises at the very time he saw the others taking away what they had just bought. Laws Mo., 1913, p. 163. (4) The mules were part of the business equipment, and the pleadings, Caldwell's answer as well as the separate answers of the other appellants, all framed practically alike, on which the case went to trial, by admitting the mules were part of the business equipment, preclude the question. See abstract, pp. 10, 11, 7, 8, 13, 14, 16. That question was not raised in the trial court. (5) Caldwell is the only appellant claiming judgment in this proceeding not maintainable for alleged reason set forth in his last point. (a) The sale was "fraudulent and void as against all creditors of the vendor" as defined in section 1 of the Bulk Sales Law. Accordingly the judgment in this proceeding is well authorized by section 2 thereof. Laws Mo., 1913, p. 163. (b) Moreover, this judgment is in favor of the main plaintiff, Oliver J. Miller, the vendor's trustee in bankruptcy, for the benefit of all his creditors, and as section 1 of the Bulk Sales Law made such sale a fraudulent transfer, said trustee in bankruptcy is

also entitled to this judgment under the authority vested in him by section 70, paragraph "e," of the Bankruptcy Law, which provides that the trustee in cases of fraudulent transfer "may recover the property so transferred or its value." Bankruptcy Law, sec. 70-e. (c) Furthermore, Caldwell had such knowledge or information and so assisted Crum in the fraud on the creditors as to render him liable irrespective of the Bulk Sales Law. Carpenter v. Karney, 193 Fed. 765; Remington on Bankruptcy, sec. 1496; Woodman on Trustee in Bankruptcy, p. 567.

BECKER, J.—This is a suit predicated upon the Bulk Sales Law of Missouri, Session Acts of Missouri, 1913, page 163. The amended petition alleges that the defendant, Crum, conducted a livery and boarding stable under the name of Crum's Boarding Stable, in the city of St. Louis, and owned and used in the said business many horses, mules, buggies, wagons, carriages, harness, and hay, oats, corn, feed, vehicles, goods, merchandise, fixtures and equipment; that said Crum had been adjudged a bankrupt and one Miller duly elected and appointed trustee of said bankrupt estate, and that such trustee had been duly authorized and directed to join in this suit as party plaintiff for the benefit of all the creditors of said Crum in bankruptcy. It was further alleged that in the early part of January, 1915, said Crum was indebted to one Balter, a plaintiff in the case, and to numerous other creditors in large amounts, and that for the purpose of hindering, delaying and defrauding his, the said Crum's creditors, he, the said Crum, sold and otherwise disposed of all of his said horses, mules, buggies, wagons, carriages, harness, and hay, oats, corn, feed, vehicles, goods, merchandise, fixtures and equipment pertaining to his said business, to the several defendants at much less than their real value and otherwise than in the ordinary course of trade and otherwise than in the regular prosecution of said Crum's business, and all as substantially one transaction and proceeding, and occurring substantially at

one time; that none of said vendees demanded or received from said vendor a written statement of the names and addresses of all the creditors of said vendor, together with the amounts of indebtedness owing by said vendor to each of such creditors; that none of said vendees notified or caused to be notified any of the creditors of said vendor of said proposed sale and trade or other disposition of said property, and that said vendor and vendees and each of them fraudently failed and refused to comply with any of the provisions of the law pertaining to such sales in bulk, approved March 25, 1913, Laws of Missouri, 1913, page 163; that none of said vendees are innocent bona-fide purchasers for value. That the defendant Crum thereafter left the city and applied all the proceeds of said sale of the property to his own use and that exclusive of the property so fraudulently transferred to the defendants there was no property of said bankrupt left for the payment of the claims of his creditors. The prayer was in conformity with the relief provided by the Bulk Sales Law.

Each of the appellants, after unavailing demurrers, filed answers in which it was admitted that each of the defendants had bought certain specific property from the defendant Crum and that no notice, as required by the Bulk Sales Law of Missouri, had been given. The reply was a general denial. A trial was had and resulted in a finding and judgment in favor of the trustee in bankruptcy, one of the plaintiffs herein, and against each of the several appellants here, defendants below, for various amounts. After unavailing motions for new trial and in arrest of judgment the said defendants bring this appeal.

It is not necessary that we go into the evidence in detail it being sufficient to state that plaintiffs' testimony makes a case providing the petition states a cause of action. In other words the sole question before us on appeal is as to whether or not the sales as alleged in the petition are within the intendment of the Bulk Sales Law of Missouri.

199 M. A.—25.

If our Bulk Sales Law is broad enough to include a livery and boarding stable within its purview then this appeal must fail, otherwise the judgment must be reversed. The law in question while not a criminal statute is yet penal in its nature and it needs no citation of authorities that in construing statutes of this character no sales are to be included as coming within its purview unless such sales are clearly within its terms. Sales in bulk laws are in derogation of the common law and of a person's right to alienate his property without restrictions and are to be strictly construed.

While bulk sales statutes are now common most of them seem to apply only to sales of a "stock of merchandise" or a "stock of goods, wares, merchandise or stock of merchandise and fixtures," but the Missouri statute applies to the "sale, trade or other disposition of the major part in value, or the whole of a stock of merchandise, or merchandise, fixtures and equipment or equipment pertaining to the vendor's business." When our statute is read as a whole as in fact it should and must be, it is clear that the intent of the lawmakers was to regulate the sale, trade or disposition of stocks of merchandise and in connection with any such stock of merchandise, the fixtures or equipment or both pertaining thereto. The words "stock of merchandise" are here used in the common and ordinary acceptation of those terms and are intended to mean goods or chattels which a merchant has for sale, such as is often referred to by the phrase "stock in trade" and the words fixtures and equipment mean fixtures and equipment or either one, pertaining to the vendor's business of merchandising.

In view of the language of the statute itself we hold that this last has no application to the sale of the wagons, horses, harness, etc., of one whose business is that of owning and operating a livery and boarding stable. In fact in several of the states in which bulk sales laws somewhat similar to the one under discussion have been held unconstitutional, it has been on the ground that the law is special class legislation which

is prohibited by the constitution of such States, and in the opinions of the courts it has been pointed out that such statutes limit their operation to merchandise and do not include farmers, manufactures, hotel keepers, mine owners, etc. [See Off & Co v. Morehead, 235 Ill. 40; Block v. Schwartz, 27 Utah, 387; McKinster v. Sager, 163 Ind. 671; Miller v. Crawford, 70 Ohio, 207; Wright v. Hart, 182 N. Y. 330.] And in the case of Wilson v. Edwards, 32 Pa. Super. Ct. 295, and in Spurr v. Travis, 145 Mich. 721, in sustaining the constitutionality of a bulk sales law it was *assumed* that it applied only to merchandise and did not include farmers, manufacturers and others.

The supreme court of the State of Washington in construing a bulk sales law which had been enacted in that State held that the horses, wagons and harness of a livery stable keeper are not within the provisions of such statute requiring every person who shall purchase ''any stock of goods, wares or merchandise'' in bulk to take a statement under oath of the creditors of the seller. [See Everett Produce Co. v. Smith, et al., 82 Pac. 905.]

We are of the opinion that our Bulk Sales Law was enacted for the protection of persons who extend credit to merchants relying upon their right to credit as ascertained from a financial report of such merchant's assets and liabilities and his past record with reference to prompt payment or settlement for goods purchased, together with a reliance upon the fact that such merchant is a *vendor of merchandise* which of necessity presumes that such merchant keeps on hand a stock of merchandise for sale, and which stock is not sold in bulk but to be kept up and replenished from time to time as the sales made therefrom may require. Credit extended in this manner presupposes a continuance in the business of merchandising on the part of him to whom the credit is extended; but it often happened that merchants who had become involved financially would dispose of their entire stock of goods to one or more persons without notice of any kind to their

creditors and perpetrate a fraud upon them, and our Legislature undoubtedly enacted the statute under discussion to prescribe a practical method for sales in bulk which would give due notice and protection to all parties interested and at the same time provide a remedy to defrauded creditors in cases where sales in bulk were made without complying with the requirements of such statute.

We hold that plaintiff's petition fails to set up allegations sufficient to state a cause of action under the Bulk Sales Law act. The judgment is reversed. *Reynolds, P. J.,* and *Allen, J.,* concur.